UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| STEPHEN SHUCART AND LAURA SHUCART, | ) ) ) ) |
| Defendant. | ) |

## COMPLAINT

Comes Now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Joshua M. Jones, Assistant United States Attorney for said District, and for its complaint against the defendant, alleges as follows:

### PARTIES

1. Plaintiff is the United States of America (the "United States"), acting on behalf of the U.S. Department of Treasury and the U.S. Small Business Administration (the "SBA").

2. Defendants, Stephen Shucart and Laura Shucart, are the defendants, individuals who reside within the Eastern District of Missouri.

### JURISDICTION AND VENUE

3. This is a civil action brought by the United States seeking to collect a debt pursuant to the Federal Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, *et seq.*

4. This Court has jurisdiction over this suit under 28 U.S.C. § 1345, because the United States is the plaintiff.

4. Venue is proper under 28 U.S.C. § 1391(b) because the defendant resides in this district.

## FACTUAL ALLEGATIONS

5. On July 22, 2005, the defendants executed a promissory note to secure a line of credit to support operations, pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note. Attached is a true and accurate copy of the promissory note executed by the defendants, marked Exhibit 1, and made a part hereof as if set out in full. Said note was subsequently assigned to the United States pursuant to 20 U.S.C. § 1071(a)(1)(D); 34 C.F.R. § 682.409.

6. That after applying any and all credits on said debt, the defendant is indebted to the plaintiff in the principal amount of $20,297.61, plus interest on this principal computed at the rate of 4.0 percent per annum in the amount of $3,923.83, plus any administrative costs, and interest thereafter on this principal rate of 4.0 percent per annum until the date of judgment. *See* Certificate of indebtedness attached hereto as Exhibit 2.

7. Demand has been made upon the defendant by the plaintiff for the sum due but the amount due remains unpaid.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays judgment against the defendants for the total of $32,961.13, the principal amount of $20,297.61, plus interest at 4.0 percent per annum, which is accruing from the of the Certificate of Indebtedness to the date of judgment; plus post-judgment

interest at the statutory rate as followed by law, together with costs of this action pursuant to 28 U.S.C. § 2412(a)(2), and any other costs of this action deemed just and proper.

JEFFREY B. JENSEN
United States Attorney

/s/ Joshua M. Jones
JOSHUA M. JONES #61988MO
United States Attorney's Office
111 S. 10th Street, Suite 20.333
St. Louis, Missouri 63102
(314) 539-2200

Attorneys for Plaintiff United States

Case: 4:19-cv-02219   Doc. #: 1   Filed: 07/26/19   Page: 3 of 3 PageID #: 3

# National City — Small Business Credit Application

**IMPORTANT INFORMATION:** If you are applying for individual credit, complete sections 1, 2 and 3 below. Persons applying for joint credit (including a joint account or an account that you and another person will use) should complete one application, including the information requested in sections 1, 2 and 3 below. Provide information about each joint applicant or user in section 3. If you are applying to guarantee the obligations of a business, complete sections 1, 2 and 3 providing information about yourself. Persons providing information who are not applicants, guarantors or Company Authorized Signers should not sign this application.

## SECTION 1 – Credit Request Information

[X] SMALL BUSINESS PREMIUM [illegible]
Amount Requested $ 50,000.00
Automatic Payments from National City business checking account # 0095214966 81

- [ ] SMALL BUSINESS EQUITY LINE OF CREDIT — Amount Requested $
- [ ] SMALL BUSINESS LINE OF CREDIT — Amount Requested $
- [ ] ACH PROCESSING — Amount Requested $
- [ ] TERM LOAN — Amount Requested $ ____ Term ____
- [ ] COMMERCIAL REAL ESTATE LOAN — Amount Requested $
- [ ] LETTER OF CREDIT — Amount Requested $

**Complete the following for all products:**
Use of funds? Start 2ND location of Assist 2 Sell (Real Estate)
Agricultural Purpose? [ ] Yes [X] No
What is your collateral? (Not required for SBPCL) N/A
Estimated collateral value? $ N/A
Loans against collateral? N/A

## SECTION 2 – Company/Sole Proprietor Information

Company Legal Name: New Options Realty Inc
Telephone: (636) 441-8700
Fax: 636-441-9188
E-Mail Address: Laura@assist2sell.com
Street Address (No P.O. Boxes): 2451 Executive Dr, Ste 200
City: St Charles  State: MO  ZIP: 63303
Billing Address (if different): S/A

Federal Tax ID# (REQUIRED): 86-1098835
Gross Annual Sales/Revenue (REQUIRED): $300,000
Description of Business (REQUIRED): Real Estate Co.
Years in Business: 1 yr 6 mo
Years as Owner: 1 yr 6 mo

Business Structure:
- [ ] Individuals applying jointly for business purpose credit
- [ ] Sole Proprietorship
- [ ] Limited Liability Co.
- [ ] General Partnership
- [ ] Limited Liability Partnership
- [ ] Limited Partnership
- [ ] Unincorporated Association
- [X] S Corp.
- [ ] C Corp
- Non-Profit Organization: [ ] Yes [X] No

State of Organization Filing: MO
State Org. ID Number: 00570719
Facilities are: [ ] Owned [X] Leased
Facilities Monthly Payment: $ NONE (using existing lease)

## SECTION 3 – Company Owners 20% or More and Other Guarantors (Use Additional Applications if Needed)

Provide personal financial information in this section if not submitting a Personal Financial Statement.

**1.** Name: Laura L. Shucart
Title: Pres.
% of Business Owned: 50
Home Telephone: 636-332-6065
Social Security #: 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
Date of Birth: 8/29/61
Home Address: 114 Townview Dr
City: Wentzville  State: MO  ZIP: 63385
U.S. Citizen: [X] Yes [ ] No

Total Annual Income: $30,000
Total Personal Assets: $342,000
Cash and Investments: $12,000
Total Personal Liabilities: $290,000
If Homeowner: Market Value: $325,000
Total Mortgage Balance: $219,000 / 48,500
Mortgage/Rent Payment: $1819 / 490

**2.** Name: Stephen J. Shucart
Title: Sec.
% of Business Owned: 50
Home Telephone: S/A
Social Security #: 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
Date of Birth: 8/27/63
Home Address: S/A
U.S. Citizen: [X] Yes [ ] No

Total Annual Income: $90,000
Total Personal Assets: Same
Cash and Investments: Same
Total Personal Liabilities: Same
If Homeowner: Market Value: $325,000
Total Mortgage Balance: Same
Mortgage/Rent Payment: Same

### Outstanding Business Loans, Including Those With National City (Use Additional Sheets if Needed)

| Lender | Type of Loan | Current Balance | Monthly Payment | Secured By |
|---|---|---|---|---|
|  |  | $ | $ |  |
|  |  | $ | $ |  |

### Other Information

Any unsettled lawsuits, judgments, or disputes? [ ] Yes [X] No
Bankruptcy ever filed by business? [ ] Yes [X] No
Any outstanding tax obligations? [ ] Yes [X] No

## SECTION 4 – Company and Guarantor Signatures - (Sign Both Places Below)

We/I certify that we/I have read and agree with the applicable terms and conditions on page 2.

Company Authorized Signature: Laura Shucart  Title: President  Date: 7/21/05
Company Authorized Signature: [signature]  Title: Secretary  Date: 7/22/05
Guarantor / Owner Individual Signature: [signature]
Guarantor / Owner Individual Signature: Laura Shucart

**PLEASE COMPLETE PAGE 2 OF APPLICATION**

71-0965-00 (Rev 04/05)  WORD Page 1 of 2



GOVERNMENT EXHIBIT 1

### SECTION 5 – Resolution/Authorization – Applicable only to Small Business Premium Credit Line

**FOR CORPORATIONS AND UNINCORPORATED ASSOCIATIONS:** I hereby certify that I am the ___President___ of the Company and that the following is a copy of a resolution adopted by the governing body at a meeting duly called and held at which a quorum was present and acting throughout or by other means authorized by law.

RESOLVED, that any one (1) officer of this entity is authorized and directed to sign and submit a Small Business Credit Application ("Application") to Bank (as defined therein) and any other documents required by Bank in connection with the Application, and to agree to be bound by all applicable Agreements (as defined therein), which Agreements contain the terms and conditions regarding the issuance of lines of credit to this entity and/or credit cards to employees, officers, directors, and associates of this entity and that any other writings executed in connection with the Application or any Agreement are hereby ratified, confirmed and approved.

Dated this ___22___ day of ___July___, ___2005___.

Secretary/Assistant Secretary _____ Attest _____

**FOR PARTNERSHIPS AND LIMITED LIABILITY COMPANIES:** All partners/members/managers of the Company, a partnership/limited liability company, hereby authorize and direct any one (1) partner/member/manager to sign and submit a Small Business Credit Application ("Application") to Bank (as defined therein) and any other documents required by Bank in connection with the Application, and to agree to be bound by all applicable Agreements (as defined therein), which Agreements contain the terms and conditions regarding the issuance of lines of credit to this entity and/or credit cards to partners/members/managers, employees and associates of this entity and that any other writings executed in connection with the Application or any Agreement are hereby ratified, confirmed and approved.

Dated this ____ day of _____, _____.

Partner/Member/Manager _____ Partner/Member/Manager _____

Partner/Member/Manager _____ Partner/Member/Manager _____

### SECTION 6 – Provisions Applicable to Company and Guarantors

The Company and individuals named on page 1 (individually and collectively, "Obligors") represent that all information in this application is accurate and complete, each is competent to enter into contracts, and no bankruptcy proceedings involving any of the Obligors are in process or anticipated. The National City Corporation affiliate ("Bank") identified in the Agreement (as defined below) and/or other loan documents, as applicable, is not obligated to grant the Obligors credit, or may offer a lower amount, and Bank may retain this application whether or not credit is granted. The Obligors authorize Bank to obtain information from others concerning the Obligors' respective credit standings and other relevant information impacting this application and, if credit is granted, from time to time throughout the term of the indebtedness, including obtaining the Obligors' personal credit reports and file copies of financial statements from any accountant or accounting firm. Upon Obligor's request, Obligor will be informed of the name and address of the consumer reporting agency that furnished the report. In addition to the information requested on this application, Bank may subsequently request additional information from the Obligors. All appropriate corporate or other similar actions needed to authorize the indebtedness incurred hereunder have been accomplished. If any person named on page 1 of this application as an Obligor has not signed above, the first Obligor signing above represents that s/he has permission from all non-signing Obligors to apply for credit on behalf of the non-signing Obligors, including, but not limited to, providing information about the non-signing Obligors. If Company is a proprietorship, owner certifies that the Company name is a trade name used in the conduct of an unincorporated business owned entirely by the owner. The Obligors further agree that any facsimile transmission may be treated as an original and such facsimile or any reproduction hereof shall be admissible into evidence as the original itself in any judicial or administrative proceeding, whether or not the original is still in existence. The Obligors certify that they do not live in, and this application is not being executed in, California, Maine, Rhode Island, Vermont or Wisconsin (agricultural requests only). **IMPORTANT INFORMATION:** Except as otherwise prohibited by law, Obligors agree and consent that the affiliates in National City Corporation (collectively "National City") may share with each other all information about Obligors that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering Obligors products or services that National City believes may be of interest to Obligors. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about an Obligor (unless Obligor is a business) if that Obligor tells National City by writing to National City Attention: Office of Consumer Privacy, P.O Box 4068, Kalamazoo, MI 49009. Please provide Obligor's name, address, social security number and account number(s).

If you sign this application in Ohio: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request The Ohio civil rights commission administers compliance with this law.

If a Small Business Premium Credit Line is issued to Company, whether issued to Company individually or jointly with any other applicant: Company agrees to be bound by all terms, provisions, and conditions contained in Bank's Small Business Premium Credit Line Agreement ("Agreement"), as amended from time to time. The Agreement will contain, among other things, the interest rate and repayment terms Bank will send an Agreement to Company with Company's card(s). If completed, Company authorizes Bank to debit the Company's National City business checking account number in Section 1 each month for the amount of the Minimum Payment as defined in the Agreement The interest rate in effect on the Account may be increased at the discretion of the Bank if the automatic deduction of payments from a National City business checking account is not established or is discontinued If we elect to include the Obligors in our SBA (U.S. Small Business Administration) Loan Program, we may submit an SBA loan application on your behalf using the information contained in the application and other information as authorized by this Agreement. For SBAExpress Lines: The maturity date of the line of credit shall be five (5) years from the date of the SBA approval.

**Important Information About Procedures for Opening A New Account:** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask your name, address, date of birth, business documents, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

### Company Agreement – Applicable only to Small Business Premium Credit Line

The Company promises to pay to the order of Bank or any subsequent holder in accordance with the Agreement, at the address listed on the monthly billing statement, the amount advanced pursuant to this application and the Agreement, including all principal, interest, fees, and other charges outstanding All terms and conditions contained in this application and the Agreement are incorporated herein by reference.

### Personal Guaranties – Applicable only to Small Business Premium Credit Line

For value received and intending to be legally bound, each of the owners named on page 1 ("Guarantor") jointly and severally guarantees the prompt payment of the indebtedness evidenced by and arising under this application and the Agreement when each payment becomes due, and approves all the provisions of this application and the Agreement. Guarantor's liability under this guaranty shall remain in effect until the indebtedness evidenced by this application and the Agreement is fully paid or until Bank gives Guarantor a written release. Guarantor agrees that: (1) Guarantor's liability shall remain in effect even if Bank agrees to changes in basic terms of the application and the Agreement without Guarantor's consent, such as (a) renewals or extensions of time, (b) releases of security or other obligors other than Guarantor, or (c) changes in the rate or method of computing interest; and (2) Bank need give Guarantor no notice of default, no notice of any change in basic terms of the application and the Agreement nor any other notice of any kind; and (3) Bank may proceed directly against Guarantor, whether or not Bank shall have first made any presentment or demand for payment to anyone and whether or not Bank proceeds against anyone else or against security (if any); and (4) Guarantor will not use, and Guarantor hereby waives, any defense to Guarantor's direct and absolute obligation to pay the indebtedness evidenced by this application and the Agreement when due, together with any interest accruing on the indebtedness evidenced by this application and the Agreement. To the extent that Company or any other person liable for all or any part of the indebtedness evidenced by this application and the Agreement makes a payment or payments to the Bank, which payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be paid to a trustee, receiver or any other party under any bankruptcy act or any other law, then to the extent of such payment, the obligation of the Guarantor hereunder to make such payment shall remain in full force and effect as if such payment had not been made. Guarantor agrees to pay upon demand all of Bank's costs and expenses, including Bank's attorneys' fees and Bank's legal expenses, incurred in connection with the enforcement of this guaranty.

71-0965-00 (Rev. 04/05)        WORD Page 2 of 2

**(8) Account Statements**
Bank will furnish Borrower a Statement at the end of each billing cycle at the end of which the Account has a New Balance (defined below) which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. "New Balance" is the sum of all outstanding Advances, fees, payments, other credits, debits, and finance charges. Card transactions and Checks that have been paid will be listed on each Statement, but actual paid Checks will not be returned. Borrower may request copies of paid Checks from Bank and a fee may be charged. Borrower must examine each Statement to discover any errors or possible Unauthorized Use and Borrower must notify Bank in writing thereof within 60 calendar days after receipt of such Statement. Failure to notify Bank thereof in writing shall constitute acceptance by Borrower of the Statement.

**(9) Processing of Checks and Cards**
Bank shall pay the Checks presented and honor Card transactions when there is sufficient available credit on the Account. Bank may, at its option, charge the Account for Checks and Card transactions which cause an overlimit. Borrower agrees that Bank may pay Checks and honor Card transactions in any order which Bank chooses. Bank reserves the right to charge non-customer payees a fee for cashing a Check. Bank may pay antedated or postdated Checks on presentment and charge them against the Account without regard to their dates. Borrower agrees that Bank handles large numbers of items and that consistent with current industry standards Bank does not review maker and/or endorser signatures, dates, or alterations and that in so doing, Bank will be deemed to have exercised ordinary care in the processing of the Checks. Borrower agrees that Bank will not be bound by any restrictive legend appearing on the face of a Check.

**(10) Stop Payment Orders**
Bank agrees to honor an oral or written stop payment order against a Check received from Borrower within a reasonable time prior to payment. A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite Borrower's name and the Account number. Borrower agrees that it is current industry standard to process stop payment orders by means of computer technology. Accordingly, Borrower's failure to provide the exact identification of Account number and/or Check number in order to identify the Check to be stopped may result in it being paid if presented and/or the dishonor of another Check, and Bank will not be liable to Borrower in such event. An oral or written stop payment order remains effective for thirteen months from the date Bank receives notice of the order. A stop payment order may be renewed for successive periods equal to its original period of effectiveness if Bank receives an oral or written renewal notice prior to the order becoming ineffective. Errors in Borrower's name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on the written stop payment order shall relieve Bank from any liability for any mistaken payment or wrongful dishonor. Any errors on Bank's written acknowledgment of a stop payment order must be reported in writing to Customer Service within 10 calendar days of the written acknowledgment date. Bank shall not be liable for any mistaken payment or wrongful dishonor arising from Bank's error and occurring after the 10-day period, unless errors or inaccuracies are reported to Bank within the 10-day period. Borrower agrees to indemnify Bank and hold it harmless from any and all expenses incurred or damages suffered by Bank in honoring a stop payment order. Before Bank will release a stop payment order, Customer Service must receive a written request, signed by Borrower requesting the withdrawal of the order. Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. Bank's acceptance of a stop payment does not mean that the Check has not yet been paid. Bank shall have no liability resulting from the payment of a Check prior to its actual receipt of a stop payment order and reasonable time to process the order. To place stop payment orders, write to National City, P.O. Box 5570, LOC 7116, Cleveland, Ohio 44101, or call the Customer Service number printed on the Statement.

**(11) Right of Setoff**
Bank has the right to deduct any amount owed by Borrower for a Minimum Payment which is more than 10 days past due and/or the entire unpaid amount owing on the Account (if the entire amount owing is due for any reason set forth in the following paragraph) from any deposit account of Borrower with Bank or from any other money Borrower has which is held by or due from Bank.

**(12) Default**
Any of the following with respect to Borrower or any guarantor ("Guarantor") of the Account shall constitute a default ("Default") hereunder: insolvency, bankruptcy, dissolution, death, declaration of legal incapacity, issuance of an attachment or garnishment against any of its property, exceeding the maximum Credit Line established by Bank for the Account, failure to make any payment when due under this Agreement or under any other note or obligation to Bank, failure to provide current financial information upon request of Bank, the making of any false or misleading statement on the application for credit or any financial statement provided to Bank, breach of any provision of this Agreement, or Bank in good faith believes that Borrower will not be able to meet the repayment requirements due to an adverse change in its financial circumstances.

Upon the occurrence of a Default, Bank shall not be obligated to make Advances or honor any Checks or accept any Card transactions and the entire amount owing on the Account shall, at Bank's option, become immediately due and payable without demand or notice except that in the case of a Default due to Borrower's insolvency or bankruptcy, the entire amount owing on the Account shall automatically become immediately due and payable without demand or notice. Interest after Default, whether prior to or after judgment by a court of competent jurisdiction, shall continue upon the outstanding balance until paid in full, at the Default Rate. Borrower agrees to pay upon demand all of Bank's costs and expenses, including without limitation court costs and reasonable attorney's fees for Bank's own salaried lawyers or independent counsel that it hires, incurred in connection with the enforcement of this Agreement. Borrower agrees to destroy all Checks and Cards upon termination.

**(13) Modification or Termination**
Bank may terminate the Account or any Card or Checks by written notice to Borrower, or as otherwise permitted by law, with or without cause. Upon termination by Bank, Borrower will be obligated to notify its Employees and destroy all Checks and/or Cards, or upon Bank's request, return them to Bank, and to pay immediately in full all amounts outstanding on the Account. Bank may change the terms of this Agreement at any time and from time to time without notice unless notice is required by law. Upon a change in terms, the new terms will apply to all new extensions of credit, and to the outstanding balance in Borrower's Account, unless Bank specifies otherwise. Borrower may terminate the Account only upon written notice received by Bank. Such notice shall be signed by an authorized officer or agent of Borrower, must contain Borrower's name, address and Account number, and be sent to the Customer Service address printed on the Statement.

**(14) Other Provisions**
(a) Borrower may not voluntarily or involuntarily assign any of its rights in the Account. (b) Borrower agrees to promptly notify Bank of any change in name or address or of any merger, reorganization, or consolidation. (c) IMPORTANT INFORMATION: We may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with Company and each guarantor or other obligor on the Account (collectively "Obligors" and each individually an "Obligor"). Also, we and our affiliates (collectively "National City") may share with each other all information about an Obligor that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering Company products and services that National City believes may be of interest to an Obligor. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about an individual Obligor if National City is told by such individual in writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009, including the individual's name, address, account number and social security number. In this Agreement, the term "affiliates" means current and future affiliates of Bank as identified in the privacy notice posted at www.NationalCity.com. (d) Bank may delay enforcing any of its rights under this Agreement without losing them. (e) Bank may accept late payments or partial payments even though marked "payment in full" without losing any of its rights under this Agreement. (f) This Agreement and the use of the Account, Credit Line, Checks and Cards shall be governed by and construed in accordance with federal law and where not pre-empted by or in conflict with federal law, the laws of the state in which Borrower is located without regard to its conflicts of law provisions. (g) If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there. (h) If the application signed by Borrower ("Application") for the Account is signed by more than one person, each person may draw Checks on the Account but each person will be issued their own Card (which may only be used by that person). Each person signing the Application is jointly and severally liable for all Advances and charges on the Account and any such person may direct Bank not to make further Advances on the Account; however, reinstatement will only be made on the joint request of all signers. (i) Charges from foreign merchants and financial institutions may be made in foreign currency. Bank will bill in U.S. Dollars based on the exchange rate on the day Bank settles the transaction plus any special currency exchange charges. In the case of Visa Accounts: the exchange rate applied to each such transaction is a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time the transaction was initiated, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**(15) Missouri Statute of Frauds Notice**
**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt, including promises to extend or renew such debt, are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

M-89057

**Small Business
Premium Credit Line Agreement
National City Bank**

**NationalCity**®

Retain this Agreement with your other important documents.
This Agreement may be the only one you receive during the lifecycle of your account and needs to be retained for future reference.

M-89057        SBLOC PCL P+2% AGRMT-SC-07

A corporation, partnership, proprietorship, individual or organization ("Borrower") has opened a Small Business Premium Credit Line account with Revolving Portion and Fixed Rate Lock (the "Account") with National City Bank (together with its successors and assigns, "Bank"). Bank has opened the Account at Borrower's request. The signature of Borrower's employee(s), agent(s), partner(s), member(s) and/or owner(s) on an application, Borrower's retention of credit cards ("Cards") or convenience checks ("Checks") and/or use of the Account in any way means Borrower agrees to all of the terms of this Agreement.

**(1) Line of Credit**
The Account is a line of credit which may be used to obtain loans ("Advances") from time to time. Borrower's initial amount of the Account ("Credit Line") is that amount which is approved by Bank and printed on Borrower's first monthly statement. Any amount repaid will again be available to borrow. Subject to the terms hereof, Borrower has the option to create Fixed Rate Locks of all or part of the Account, each having a fixed rate and a fixed payment amount (each an "FRL"). The Fixed Rate Lock balance includes the FRL Advance Fee. The portion of the Account that is not part of the FRL shall be known as the Revolving Portion. Any principal amount repaid on the Revolving Portion and/or any FRL will again be available to borrow once it is posted to the Account. Bank may change the amount of the Credit Line at any time, in its sole discretion, by advising Borrower of such change.

**(2) Advances**
Borrower may obtain Advances on the Account by issuing special Revolving Portion checks and special FRL checks (collectively, "Checks") supplied by Bank, by contacting Bank's Customer Service Department ("Customer Service") or by way of any other Bank-approved method. Checks must be ordered through Bank. Bank will charge the Checks directly against the Account. Borrower may make arrangements for an Advance on the Account to pay off any FRL at any time by contacting Customer Service at the address or telephone number printed on the Statement. Borrower should notify Bank when Borrower needs more Checks. The minimum Advance the Borrower can receive using an FRL Check is $5,000. FRL Checks for less than $5,000 are charged against the Account as an Advance under the Revolving Portion. You should also notify Bank immediately if your Checks are lost or stolen. (See "Stop Payment Orders" section).

Bank may issue Borrower a Card or Cards for use with the Account. Borrower hereby authorizes Bank to issue Borrower Card(s) for use with the Revolving Portion of the Account. The word "Card" can mean one or more credit cards or Automated Teller Machine (ATM) cards (if available). Borrower may purchase goods or services from merchants who honor the Card. Borrower may obtain Advances from Bank or any other financial institution that honors the Card. Borrower may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to the Account. If Borrower allows someone else to use Borrower's Card or PIN and Borrower wants to stop such use, Borrower must advise Bank in writing. If such other person has Card or PIN, Borrower must return the Card with a written notice to Bank and/or request a new PIN from Bank.

Borrower must notify Bank immediately if Borrower's Card(s) or PIN are lost or stolen, or Borrower believes that some person may be using Borrower's Card(s) or PIN without permission. Borrower will not use Borrower's Account after notifying Bank of loss, theft, or unauthorized use of Borrower's Card(s) or PIN. Bank may

2/07

terminate the use of Borrower's Card(s) or PIN if Borrower loses Borrower's Card(s) or PIN two times or more in a twelve-month period. Bank may also terminate the use of Borrower's Card(s) or PIN if Borrower's New Balance exceeds Borrower's Credit Line by 2% or more or if Borrower is over limit for more than one billing cycle.

Bank will have no obligation to make an Advance, may return any Check unpaid or decline a Card transaction, and have no liability for such dishonor, under each of the following circumstances: if the Account has been terminated either by Borrower or Bank; if the resulting balance of the Account would exceed the Credit Line; or in the event the Account is in Default; and upon Bank's request, Borrower will return Checks and/or Cards.

**(3) Finance Charges**
(a) Revolving Portion Advances: Advances under the Revolving Portion are subject to finance charges from the date of transaction to the date payment is posted to the Account. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index. The index in effect for each billing cycle shall be the "Prime Rate" of interest as published in the Money Rates Table of *The Wall Street Journal* on the 10th business day prior to the last day of the billing cycle ("Index"). The annual percentage rate for the Revolving Portion is the Index plus 2%. The finance charge for each billing cycle shall be computed at the annual percentage rate divided by 12. However, in no event shall the annual percentage rate exceed the maximum rate, if any, permitted by law. Bank figures the finance charge on the Revolving Portion by applying the monthly periodic rate to the average daily balance under the Revolving Portion (including current transactions). To get the average daily balance under the Revolving Portion, Bank takes the beginning balance under the Revolving Portion each day, adds any new Advances, and subtracts any payments, credits, fees, and unpaid finance charges. This gives Bank the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides by the total number of days in the billing cycle. This gives Bank the average daily balance on the Revolving Portion. Any introductory rate that applies shall be specified on the card carrier delivered to Borrower.

(b) Fixed Rate Lock Advances: Bank figures the finance charges on each FRL by applying the periodic rate to the "average daily balance" of each FRL. To get the "average daily balance," Bank takes the beginning balance of each FRL each day and subtracts any payments or credits and unpaid finance charges. This gives Bank the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives Bank the "average daily balance" on the FRL. Each Advance for an FRL is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to the Account. The index shall be the highest daily rate for two (2)-year Treasury Notes with constant maturities from the first (1st) business day through the eleventh (11th) business day prior to the last business day of the calendar month preceding the month in which the transaction posts to the Account, rounded upward, if necessary, to the nearest 0.125% ("FRL Index"). The FRL Index can be found in the Federal Reserve Statistical release H.15 at www.federalreserve.gov/releases/h15. The annual percentage rate for an FRL is the FRL Index plus a margin ("FRL Margin"). The finance charge for each billing cycle shall be computed at the annual percentage rate divided by 12. However, in no event shall the annual percentage rate exceed the maximum rate, if any, permitted by law. The FRL Margin for the 5-Year FRL (60 months) is 4.00%.

(c) Default Rate: Regardless of any other provisions of this Agreement to the contrary (including any introductory or promotional interest rates), if Borrower fails to make two consecutive minimum payments (as defined in Section (5) of this Agreement) by the due date shown on the Statement, Bank may, at its discretion, if permitted by applicable law, increase the annual percentage rate for all Revolving Portion Advances (including existing Revolving Portion balances and all future Advances) to a higher "Default Rate." The Default Rate is the contractual rate in effect at the time the Default Rate is imposed plus three percent (3%) per annum. However, in no event shall the Default Rate exceed the maximum rate, if any, permitted by law. The application of a Default Rate shall not cure the default that caused the Default Rate to be charged, nor shall it affect any of Bank's rights under the "Default" section of this Agreement. The Revolving Portion may again be eligible for the annual percentage rate that would otherwise apply after Borrower has met the repayment requirements of this Agreement for three (3) consecutive billing cycles. After three (3) consecutive timely payments, the Revolving Portion will be reviewed automatically. If all payments made were greater than or equal to the minimum payment required and were received by their respective due dates, the annual percentage rates for existing balances, as well as new Advances, will become the terms which would then apply to the Revolving Portion had the two consecutive payments not been missed. However, the Revolving Portion will no longer be eligible for any introductory or promotional rate.

**(4) Fees**
Borrower shall pay an annual fee to Bank of $175, whether or not Advances are made under the Account. This fee is not refundable. The fee is assessed in the billing cycle following the first anniversary of the opening of the Account and each year thereafter. The annual fee may be paid to Bank, at Bank's option, by Bank deducting such fee from the available and unused Credit Line.

In addition, the following other fees apply to the Account:
(a) A late charge of $40 or ten percent (10%) of the amount due, whichever is greater, if Borrower is more than ten (10) days late in paying any amount due hereunder and Bank does not require immediate payment of the whole amount outstanding hereunder. (b) An FRL advance fee of $150 for each FRL used (the "FRL Advance Fee"). (c) An overlimit fee of $25 whenever the outstanding balance of the Account exceeds the Credit Line. Bank may charge an additional overlimit fee for each billing cycle in which the Account exceeds the Credit Line. (d) A returned payment fee of $25 if a payment on the Account is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason. (e) A returned check fee of $25 if Bank dishonors a Check under the "Advances" section of this Agreement. (f) A stop payment fee of $25 for each stop payment order on a Check or renewal of a stop payment order. (g) A photocopy fee of $5 for each copy supplied by Bank at Borrower's request.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. The application of any fee shall not cure the Default which initiated the fee.

**(5) Payment**
Borrower shall be liable for all Advances, finance charges, and other amounts charged to the Account. Payments will be due monthly. Borrower is required to pay Bank, at the address specified on each monthly statement ("Statement") and on or before the due date shown on such Statement, a minimum payment amount shown on the Statement equal to the sum of the Revolving Portion Minimum Payment and the FRL Minimum Payment for each FRL in use. (a) The Revolving Portion Minimum Payment is the greatest of: (i) 1.5% of the New Balance as shown on each Statement, (ii) the periodic finance charges that accrued on the outstanding balance under the Revolving Portion during the preceding billing cycle as shown on the Statement, or (iii) $100.00 (or whatever portion of $100.00 is necessary to pay Bank in full). (b) The FRL Minimum Payment is a fixed payment amount that is sufficient to pay off the FRL, including the FRL Advance Fee, at the fixed rate applicable to that FRL based on the number of monthly payments for the FRL Repayment Term as described in Section (3)(b). Additional prepayments on any FRL may be made at any time, without premium or penalty, but Borrower will continue to be obligated to make the required fixed payment for each FRL as long as any amount is still owing on such FRL. The amount of any reduction in principal from a payment on any FRL will become available to Borrower under the Account once it is posted.

**(6) Use of Checks, Cards and Account**
Borrower agrees that all Advances, whether by Check, Card or telephone are or will be used for business or commercial purposes. Borrower may authorize its employees, officers or agents ("Employees") to issue Checks or use a Card issued to such Employee only for the legitimate business expenses incurred in the ordinary course of their employment or agency with Borrower and Borrower agrees to take all necessary steps to insure that the Checks and Cards are used for no other purpose. Borrower shall be solely and completely responsible for the possession, use and control of Checks and Cards. Borrower agrees that it shall be bound by the acts of its Employees, and shall pay to Bank when due all amounts charged to the Account pursuant to the use of the Checks, the Cards or the Account by its Employees. Borrower agrees to indemnify Bank and hold Bank harmless against any loss incurred by Bank by reason of the use of a Check, a Card or the Account which is not in accordance with this Agreement. Borrower shall pay to Bank any amounts charged or incurred pursuant to the use of a Check, a Card or the Account that is not in accordance with this Agreement the same as if the use had been in accordance with this Agreement. Borrower agrees that it shall remain liable for Checks issued and Cards used by a former Employee even though that former Employee has ceased to have any authority to issue Checks or use Cards on the Account.

**(7) Unauthorized Use**
"Unauthorized Use" shall mean that use of a Check, a Card or the Account by a person other than an Employee or former Employee and from which neither Borrower nor any Employee or former Employee receives any benefit. Use other than Unauthorized Use shall be deemed to be authorized. Unauthorized Use includes but is not limited to forgeries and alterations. Borrower shall notify Bank immediately if any Checks or Cards are lost or stolen. Except as provided by law, Borrower agrees to indemnify Bank and hold Bank harmless against any loss incurred by Bank by reason of Unauthorized Use occurring prior to Bank's receipt of notice of loss, theft, or possible Unauthorized Use by phone at 1-800-533-6596 or in writing to National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003. Except as provided by law, Borrower shall pay to Bank any amounts charged to the Account as a result of extensions of credit, or charges incurred pursuant to any Unauthorized Use which occurs prior to Bank's receipt of notice of loss, theft, or possible Unauthorized Use, the same as if the credit had been extended or charges incurred pursuant to the use of Checks or a Card by an Employee with full authority to use the Checks, the Card or Account. Unauthorized Use will be deemed to be the result of negligence on the part of Borrower. Bank shall be liable only if grossly negligent and in no event shall Bank be liable for any consequential, indirect or special damages.

M-89057



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, D.C. 20227

ACTING ON BEHALF OF
U.S. Small Business Administration
CERTIFICATE OF INDEBTEDNESS

Debtor Name(s) and Address(es):

Laura Lee Shucart
114 Townview Drive
Wentzville, MO 63385

Stephen Joseph Shucart
102 E. Pearce Blvd
Wentzville, MO 63385

RE: Treasury Claim TRFM2014264310

I certify that the U.S. Small Business Administration (SBA) records show that the debtor named above is indebted to the United States in the amount stated as follows:

| | | |
|---:|---:|---:|
| Principal: | $ | 20,297.61 |
| Interest through 05/20/2019*: | $ | 3,923.83 |
| DMS fees: | $ | 7,750.86 |
| DOJ fees: | $ | 988.83 |

(pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note)

**TOTAL debt owed as of 05/20/2019:  $ 32,961.13**

*NOTE: Per the creditor agency profile, the debt continues to accrue interest at the annual rate of 4.00% (or $2.23 daily).

This debt arose in connection with the co-debtor's January 2014 default on a SBA Express Loan (#14267350-00) in the amount of $20,000.00.

**CERTIFICATION:**  Pursuant to 28 USC ss. 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by the U.S. Small Business Administration.

X *Natalie R. Stubbs*

Signed by: Natalie R. Stubbs
Natalie Stubbs
Financial Program Specialist
U.S. Department of the Treasury
Bureau of the Fiscal Service



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STEPHEN SHUCART AND LAURA SHUCART,

    Defendant,

Case No.

## ORIGINAL FILING FORM

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

☐ THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____ AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐ THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY PREVIOUSLY FILED COMPLAINT. THE RELATED CASE NUMBER IS _____ AND THAT CASE WAS ASSIGNED TO THE HONORABLE _____. THIS CASE MAY, THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒ NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE MAY BE OPENED AS AN ORIGINAL PROCEEDING.

The undersigned affirms that the information provided above is true and correct.

Date: July 26, 2019

_____
Signature of Filing Party

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**
Stephen Shucart, 102 E. Pearce Blvd., Wentzville, MO 63385
Laura Shucart, 114 Townview Dr., Wentzville, MO 63385

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  St. Charles County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
JOSHUA M. JONES, Assistant United States Attorney, U.S. Attorney's Office, 111 South 10th Street, Suite 20.333, St. Louis, MO 63102
(314) 539-2200

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 480 Consumer Credit |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Pursuant to 31 U.S.C. 3717(e) & 3711(g)(6), (7), 31 C.F.R. 285.,12(j) and 31 C.F.R. 901.1(f); & 28 U.S.C. 527

Brief description of cause:
Secure a line of credit to support operations.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**   32,961.13

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [ ] Yes   [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  7/26/19

SIGNATURE OF ATTORNEY OF RECORD  /s/

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*<br>v.<br>STEPHEN SHUCART AND LAURA SHUCART,<br>*Defendant* | )<br>)<br>) Civil Action No.<br>)<br>) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  STEPHEN SHUCART, 102 E. PEARCE BLVD., WENTZVILLE, MO 63385
(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 7/26/19

*Signature of the attorney or unrepresented party*
JOSHUA M. JONES
*Printed name*
111 SOUTH 10TH STREET, SUITE 20.333
ST. LOUIS, MO 63102
*Address*
Joshua.M.Jones@usdoj.gov
*E-mail address*
314-539-2310
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

UNITED STATES OF AMERICA,
*Plaintiff*
v.
STEPHEN SHUCART AND LAURA SHUCART,
*Defendant*

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: UNITED STATES OF AMERICA
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from  7/26/19 , the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

STEPHEN SHUCART
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff* <br> v. <br> STEPHEN SHUCART AND LAURA SHUCART, <br> *Defendant* | ) <br> ) <br> ) Civil Action No. <br> ) <br> ) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: LAURA SHUCART, 114 TOWNVIEW DRIVE, WENTZVILLE, MO 63385
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: __7/26/19__

*Signature of the attorney or unrepresented party*

JOSHUA M. JONES
*Printed name*

111 SOUTH 10TH STREET, SUITE 20.333
ST. LOUIS, MO 63102
*Address*

Joshua.M.Jones@usdoj.gov
*E-mail address*

314-539-2310
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

UNITED STATES OF AMERICA,
*Plaintiff*
v.
STEPHEN SHUCART AND LAURA SHUCART,
*Defendant*

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: UNITED STATES OF AMERICA
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from ___7/26/19___, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

LAURA SHUCART
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.